United States District Court
Middle District of Florida
Jacksonville Division

UNITED STATES OF AMERICA,

     *Plaintiff,*

v.                                                                    **No. 3:17-cr-44-J-34PDB**
                                               **No. 3:18-cv-969-J-34PDB**

ANYI ARTICA-ROMERO,

     *Defendant.*

_____

# Report and Recommendation

Anyi Artica-Romero moves for bail pending a decision on her motion under 28 U.S.C. § 2255.[1] Civ. Doc. 2. She filed the motion for bail and motion under § 2255 on Thursday, August 9, 2018. Civ. Docs. 1, 2. The Court originally ordered her to report to custody by Tuesday, August 14, 2018, at 2:00 p.m. Crim. Doc. 97. That date and time has been extended to Friday, August 17, 2018, at 2:00 p.m. Crim. Doc. 105. The United States opposes bail. Civ. Doc. 11. The undersigned conducted a telephone conference to discuss an abbreviated period to object to this report and recommendation and access to the audio files of criminal proceedings not transcribed. Both sides agreed to an expedited objection period to 5:00 p.m., Wednesday, August 15, 2018.

---

[1]Section 2255 relief is available only to a federal prisoner who is "in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255(a). A movant seeking relief under § 2255 must be "in custody" at the time her motion is filed. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). In *United States v. DiBernardo*, the Eleventh Circuit ruled that "imminence of imprisonment for the sentences received is sufficient to satisfy the custody requirement" of § 2255. Considering that Artica-Romero must report to the Bureau of Prisons no later than 2:00 p.m. on Friday, August 17, 2018, imprisonment is imminent, and she satisfies the "in custody" requirement of § 2255.

## Background

Based on Artica-Romero's guilty pleas pursuant to a written plea agreement, the Court adjudicated her guilty of two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Crim. Doc. 66. The conspiracy involved misrepresentations about employee numbers and payroll amounts to minimize the cost of insurance for worker's compensation. PSR ¶¶ 15–34. At sentencing, the Court determined a total offense level of 20 (base offense level 7 because the offense is punishable by up to 20 years' imprisonment, plus 14 based on gain of $812,149 because loss could not be reasonably determined, plus 2 because the offense involved a violation of the "Stop-Work Order," minus 2 because she accepted responsibility, and minus 1 because she assisted the prosecution by timely pleading guilty), a criminal history category of I, and a guidelines range of 33 to 41 months. Crim. Doc. 76 ¶¶ 55, 59, 89; *see also* rough transcript of sentencing hearing at which neither side objected to guidelines determinations. The Court sentenced her to serve 18 months' imprisonment. Crim. Doc. 86.

## § 2255 Motion

In her § 2255 motion, Artica-Romero contends her trial counsel was ineffective in (1) failing to advise her that conspiracy to commit wire fraud is an aggravated felony under immigration law that would cause deportation and (2) failing to object to the use of actual gain of $812,149 to determine her offense level. Civ. Doc. 1 at 7, 12.

## Bail Motion

In her bail motion, Artica-Romero contends her § 2255 motion presents "substantial questions" that are likely to succeed on the merits. Crim. Doc. 100 at 5. She also contends she presents extraordinary circumstances: but for release, she likely will serve the rest of her prison term before her § 2255 motion is decided considering presumed good-conduct time; she is the sole caretaker of four minor

2

daughters, including one with a chronic medical condition; and on August 16, 2018, she will receive results of a test to determine if she (Artica-Romero) has cervical cancer. Crim. Doc. 100 at 6. She submits the child's medical records under seal, which confirm the chronic medical condition and document ongoing treatment for it, Civ. Doc. S-7; a letter from the child's doctor explaining the medical condition and opining that the child will benefit greatly from Artica-Romero's continued care of her in her home, Civ. Doc. 1-1; and a letter confirming the August 16 appointment, Civ. Doc. 1-2.

## Law & Analysis

A district court has inherent power to release a prisoner on bail pending a decision on a § 2255 motion.[2] *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975).

---

[2]Artica-Romero relies on Federal Rule of Appellate Procedure 23. Rule 23 provides,

(a) **Transfer of Custody Pending Review**. Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

(b) **Detention or Release Pending Review of Decision Not to Release**. While a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court, may order that the prisoner be:

(1) detained in the custody from which release is sought;

(2) detained in other appropriate custody; or

(3) released on personal recognizance, with or without surety.

(c) **Release Pending Review of Decision Ordering Release**. While a decision ordering the release of a prisoner is under review, the prisoner must- -unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise--be released on personal recognizance, with or without surety.

But the movant "faces a formidable barrier created by the fact of the conviction and the government's interest in executing its judgment." *United States v. Hollingsworth*, No. 90-6750, 1990 WL 36663, at *1 (4th Cir. Mar. 14, 1990) (unpublished). For bail pending a decision on a § 2255 motion, the prisoner must show a likelihood of success on the merits of a substantial constitutional claim and exceptional circumstances that make bail necessary to preserve the effectiveness of the § 2255 relief sought.[3] *Gomez v. United States*, 899 F.2d 1124, 1125 (11th Cir. 1990).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). To succeed on an ineffective-assistance-of-counsel claim, a defendant must show that counsel's performance was deficient, which means that it "fell below an objective standard of reasonableness" and was "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).[4] The defendant also

---

(d) **Modification of the Initial Order on Custody**. An initial order governing the prisoner's custody or release, including any recognizance or surety, continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody, release, or surety is issued.

Fed. R. App. P. 23(a)–(d). By its terms, Rule 23 applies only after the district court has ruled on the § 2255 motion and the ruling is on appellate review. *Landano v. Rafferty*, 970 F.2d 1230, 1238 (3d Cir.1992); *Maddox v. Thomas*, No. CV 18-00133 DKW-RLP, 2018 WL 2187976, at *5 (D. Haw. May 11, 2018) (unpublished); *Hall v. San Francisco Superior Court*, No. C 09-5299 PJH, 2010 WL 890044, at *1 (N.D. Cal. Mar. 8, 2010) (unpublished).

Because this Court has not yet ruled on Artica-Romero's § 2255 motion, Rule 23 does not apply.

[3]To define "substantial constitutional claim," Artica-Romero relies on the definition of "substantial question of law or fact," used to decide bail pending a direct appeal. Doc. 2 at 4–5 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Because she is not seeking bail pending direct appeal, that standard does not apply.

[4]A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To overcome that presumption, a defendant must show that "no competent counsel would have taken the

4

must show that counsel's deficient performance prejudiced her by showing, in the plea context, a "reasonable probability" that, but for counsel's deficient performance, she would not have pleaded guilty and would have insisted on going to trial. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017).

Here, even if Artica-Romero could show a substantial constitutional claim and exceptional circumstances, she has not shown a likelihood of success on the merits of any such claim.

On her first claim, even if Artica-Romero could show her trial counsel was deficient in the manner she claims, she has not shown she is likely to show a reasonable probability that, but for her trial counsel's alleged deficient performance, she would not have pleaded guilty and would have insisted on going to trial.

At the March 28, 2017, initial appearance, the prosecutor advised Artica-Romero that a conviction could adversely affect her immigration status now and later and could cause deportation or removal from the United States. At the March 30, 2017, arraignment, the prosecutor repeated that advisement.[5]

At the March 30, 2017, detention hearing, the prosecutor explained that Artica-Romero is in the United States illegally, removal proceedings have been pending since 2014, she will be removed unless her counsel can convince an immigration judge to cancel the removal, and removal is almost certain if she is convicted. Her original trial counsel added that an immigration lawyer was working on a change to Artica-Romero's immigration status and cancellation of removal. And the undersigned—evaluating flight risk—asked her original trial counsel to address

---

action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

[5] A Spanish interpreter interpreted all proceedings for Artica-Romero. Crim. Doc. 11 (initial appearance); Crim. Doc. 19 (arraignment and detention); Crim. Doc. 56 (change-of-plea); Crim. Doc. 85 (sentencing).

the prosecutor's concern that the likelihood she will be removed if convicted is "high if not definite."

In the plea agreement, signed January 10, 2018, Artica-Romero agreed:

8.    <u>Removal – Notification</u>

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which the defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. **The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence**.

Crim. Doc. 59 at 4 (emphasis added).

At the January 26, 2018, change-of-plea hearing, in discussing consequences of pleading guilty, the undersigned explained to Artica-Romero that pleading guilty would have consequences to her immigration status and the offense to which she was pleading may be a removable offense. In discussing the plea agreement, the undersigned explained that a conviction likely would adversely affect her status in the United States now and later and could and likely would cause her removal. She confirmed her understanding. She verified that the plea agreement had been translated for her, she had read every page, and she understood every part. She verified her initials and signatures on the plea agreement. She confirmed no one had made any promise or assurance to her different from or contrary to what is in the plea agreement and confirmed she was not relying on any agreement outside of the plea agreement. The undersigned found she entered her pleas intelligently, knowingly, and voluntarily. Crim. Doc. 61.

At the May 29, 2018, sentencing hearing, Artica-Romero voiced no objection when her trial counsel explained, "Judge, she is looking at deportation. I have been studying this, up, down, with her. We've talked to immigration lawyers. We see a very, very steep road ahead of us." *See* rough transcript of sentencing hearing. And she voiced no objection when her trial counsel explained, "We are immediately going to be dealing with immigration. And, Judge, if she is going to be deported, then we will go ahead and sign the necessary paperwork so that we won't object to an immediate deportation." *See* rough transcript of sentencing hearing.

On this record, Artica-Romero has not shown a likelihood of success on the merits of a substantial constitutional claim; stated another way, she has not shown she is likely to show a reasonable probability that, but for her trial counsel's alleged deficient performance, she would not have pleaded guilty and would have insisted on going to trial. The case on which the United States relies—*Kealy v. United States*, 722 F. App'x 938 (11th Cir. 2018)—is analogous and bolsters that conclusion. There, the Eleventh Circuit held that a similar plea-agreement provision and colloquy cured counsel's alleged deficient performance in not correctly advising the defendant of immigration consequences of pleading guilty and, therefore, the defendant could not show prejudice. *Kealy*, 722 F. App'x at 946.[6]

On her second claim, Artica-Romero has not shown a likelihood of success on the merits of a substantial constitutional claim because, even assuming she can show prejudice, she likely cannot show her trial counsel was deficient in failing to object to the use of actual gain instead of loss based on the $31,209.34 loss claimed by a victim.

Under USSG § 2B1.1, loss to determine the offense level is the greater of actual or intended loss, intended loss is the pecuniary gain the defendant purposefully

---

[6]The plea agreement in *Kealy*, unlike the plea agreement here, specified presumptively mandatory removal. *See* 722 F. App'x at 941. Because Artica-Romero affirmed that she wanted to plead guilty even if it meant automatic removal from the United States after her sentence, Crim. Doc. 59 at 4–5, the difference is immaterial.

sought to inflict, and intended loss "includes intended pecuniary harm that would have been impossible or unlikely to occur." USSG § 2B1.1, comment. (n.3(A)).

In a case cited by the United States, the Sixth Circuit held that the intended loss for the type of fraud involved in Artica-Romero's conspiracy equals the unpaid premiums. Civ. Doc. 11 at 11 (citing *United States v. Simpson*, 538 F.3d 459, 461 (6th Cir. 2008)). The Sixth Circuit explained, "Because the additional amount of premiums that Simpson's carriers would have received but for his fraud represents the 'loss' caused by that misconduct for Guidelines purposes, application of a sixteen-level increase to Simpson's base offense was proper. Simpson attempted to take something of substantial value, insurance coverage, without compensating the carriers, thus causing the requisite direct pecuniary loss." *Simpson*, 538 F.3d at 462.

Artica-Romero's counsel thus faced "intended loss" as the alternative to actual gain, evidence that unpaid premiums here totaled more than $1.5 million, and a non-binding but persuasive case holding that the intended loss for the type of fraud involved in Artica-Romero's conspiracy equals unpaid premiums. She has not shown a likelihood of success on her argument that her trial counsel—under those circumstances—rendered performance that fell below an objective standard of reasonableness in not objecting to the use of the lesser actual gain amount of $812,149.[7]

Because Artica-Romero has made no showing of likelihood of success on the merits of a substantial constitutional claim, the undersigned recommends denying her motion for bail pending a decision on her § 2255 motion.

When a district court enters an order adverse to a § 2255 movant, it must issue

---

[7]Moreover, Artica-Romero cites no authority for the proposition that the amount claimed by a victim equates to the loss amount for purposes of USSG § 2B1.1. As the United States observes, that would be a "dubious proposition" because victims often do not seek restitution for their losses.

or deny a certificate of appealability, and if it issues a certificate of appealability, it must state the issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing Section 2255 Proceedings.

Section 2253(c)(2) permits the issuance of a certificate of appealability only if the movant has made a "substantial showing of the denial of a constitutional right." At the certificate-of-appealability stage, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted). A district court's order denying bail pending a § 2255 motion is a final order under the collateral order doctrine, and a petitioner must have a certificate of appealability to appeal it. *Pagan v. United States*, 353 F.3d 1343, 1346 (11th Cir. 2003).

Artica-Romero cannot make that showing required by § 2253(c)(2). If she disagrees, she may explain in an objection to this report and recommendation why a certificate of appealability should issue. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## Recommendations[8]

I recommend (1) **denying** Artica-Romero's motion for bail pending a decision on her § 2255 motion, Civ. Doc. 2, and (2) **denying** a certificate of appealability for an appeal of the order denying the motion for bail. As agreed by the parties, any objection to this report and recommendation must be filed by **5:00 p.m. on**

---

[8]Federal Rule of Criminal Procedure 59 governs objections to a magistrate judge's report and recommendation. A failure to object results in a waiver of a party's right to review. Fed. R. Crim. P. 59; *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

**Wednesday, August 15, 2018**.

Ordered in Jacksonville, Florida, on August 14, 2018.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Chip Corsmeier, Assistant United States Attorney
     William Kent, Esquire

10