**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANYI ARTICA-ROMERO,

        Petitioner,

vs.                            Case No.:    3:18-cv-969-J-34PDB
                                                      3:17-cr-44-J-34PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

**ORDER**

This cause is before the Court on the Report and Recommendation (Civ. Doc. 14; Report)[1] entered by the Honorable Patricia D. Barksdale, United States Magistrate Judge, on August 14, 2018. In the Report, Judge Barksdale recommends that Petitioner Anyi Artica-Romero's Motion for Bail Pending Habeas Corpus Relief (Civ. Doc. 2; Motion for Bail) be denied. <u>See</u> Report at 9. Later the same day, after agreeing to an abbreviated objection period (Civ. Doc. 13), Artica-Romero filed her objections to the Report. (Civ. Doc. 16; Objections). The United States filed a response to the Objections on August 16, 2018. (Civ. Doc. 21; Response). Thus, the matter is ripe for review.[2]

The Court may "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific

---

[1]    Citations to the record in the underlying criminal case, <u>United States v. Anyi Artica-Romero</u>, No. 3:17-cr-44-J-34PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil 28 U.S.C. § 2255 case, No. 3:18-cv-969-J-34PDB, will be denoted as "Civ. Doc. __."

[2]    After the United States responded to Artica-Romero's Objections, Artica-Romero filed an amended motion to vacate under 28 U.S.C. § 2255. (Civ. Doc. 22; Amended § 2255 Motion). The Amended § 2255 Motion is the same as the original; it was only amended to add Artica-Romero's signature. Thus, the filing of the Amended § 2255 Motion does not change the analysis.

objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the Court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615 at *1 (M.D. Fla. May 14, 2007).

Upon independent review of the file, the Court will accept and adopt the legal and factual conclusions recommended by Judge Barksdale. The Court also writes to address the fact that Artica-Romero entered the country in 2002 illegally, has remained an illegal alien since that time, and thus was subject to deportation even before she entered a plea of guilty in her criminal case. (Crim. Doc. 76; PSR at 2, 16 ¶ 69). For this reason, as well as those stated in the Report, the Court determines that Artica-Romero is not likely to succeed on the merits of either of her claims. The Court further concludes that she has failed to show that extraordinary or exceptional circumstances exist necessitating bail to preserve the effectiveness of habeas relief. Therefore, her Objections are due to be overruled, and her Motion for Bail is due to be denied.

## I.    Background

On January 26, 2018, Artica-Romero pled guilty to two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. (Crim. Doc. 59; Plea Agreement); (Crim. Doc. 107; Plea Tr.). In exchange for her plea of guilty, the United States agreed to dismiss Counts Three through Fifty-Seven of the Indictment, see Plea Agreement at 3 ¶ A.4, to recommend a two-level reduction to her adjusted offense level for acceptance of

responsibility pursuant to U.S.S.G. § 3E1.1(a), id. at 3 ¶ A.6, and to recommend an additional one-level reduction if Artica-Romero qualified under § 3E1.1(b), id.

According to her Plea Agreement, between September 2015 and March 2017, Artica-Romero worked for two construction companies. Plea Agreement at 22-28. As part of the charged conspiracy, Artica-Romero and her co-defendants caused workers' compensation insurance companies to unknowingly provide insurance coverage for hundreds of construction workers and millions of dollars of payroll despite not being paid the premiums commensurate with such coverage. (Crim. Doc. 76; PSR at ¶¶ 15-34). At sentencing, the Court determined that Artica-Romero had a total offense level of 20 and a criminal history category of I under the United States Sentencing Guidelines (Guidelines), yielding an advisory sentencing range of 33 to 41 months' imprisonment. See PSR at ¶¶ 55, 58, 89. The Court calculated the total offense level as follows: a base offense level of 7 because the offense of conviction was punishable by up to 20 years' imprisonment, plus a 14-level enhancement because the loss could not be reasonably determined and the gain was $812,149, plus a 2-level enhancement because the offense involved a violation of a "Stop Work Order" issued by the State of Florida, and minus 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1. The Court ultimately varied below the Guidelines range and sentenced Artica-Romero to a term of imprisonment of 18 months. (Crim. Doc. 86; Judgment).

Artica-Romero did not appeal the Court's sentence. However, less than three months after the Court entered judgment, Artica-Romero filed a motion to vacate under 28 U.S.C. § 2255. (Civ. Doc. 1; § 2255 Motion). In the § 2255 Motion, Artica-Romero raises two claims: (1) that trial counsel gave ineffective assistance under Padilla v. Kentucky, 559

U.S. 356 (2010), because he failed to advise her that the offense to which she was pleading guilty rendered her automatically deportable, and (2) counsel gave ineffective assistance at sentencing by failing to object to the use of the gain amount ($812,149) to determine her offense level.

Shortly after filing the § 2255 Motion, Artica-Romero filed the Motion for Bail. Citing the standard set forth in Gomez v. United States, 899 F.2d 1124, 1125 (11th Cir. 1990), Artica-Romero contends that the Motion for Bail should be granted because she is likely to succeed on the merits of the § 2255 Motion, which she argues presents substantial constitutional questions. She further argues that her case presents extraordinary circumstances that warrant bail, because she will likely serve out her entire 18-month prison term before the Court rules on her § 2255 Motion, she is the sole caretaker of four minor daughters, one of whom suffers from idiopathic thrombocytopenic purpura (ITP), a chronic medical condition, and on August 16, 2018, she has a doctor's appointment to receive test results to determine if she has cervical cancer.

On August 14, 2018, Judge Barksdale extended Artica-Romero's self-report date until August 17, 2018, at 2:00 p.m. so she could attend the doctor's appointment. (Civ. Doc. 13).[3] Later that same day, Judge Barksdale entered the Report recommending that the Court deny the Motion for Bail. In the Report, Judge Barksdale recommends that the Court find that Artica-Romero is not likely to succeed on the merits of either of the claims in her § 2255 Motion. First, Judge Barksdale concludes that even assuming trial counsel failed to advise Artica-Romero that pleading guilty would subject her to automatic

---

[3]      On the morning of August 17, 2018, at the request of the undersigned, Judge Barksdale once again extended the report date (until Monday, August 20, 2018, at 3:30 p.m.) to allow sufficient time for consideration of the Report, the Objections and the Response. (Crim. Doc. 110).

deportation, she is unlikely to be able to show that she suffered prejudice. Report at 5-7. In support of this conclusion, Judge Barksdale observes that Artica-Romero received numerous warnings in Court that a conviction would likely result in her deportation, including at her initial appearance, at her detention hearing, and during the plea colloquy. Judge Barksdale further observes that in her Plea Agreement, Artica-Romero specifically stated that she agreed to plead guilty even if the consequence of doing so was automatic removal. In light of the fact that Artica-Romero pled guilty despite these warnings and statements, Judge Barksdale recommends that the Court find Artica-Romero has not shown that she is likely to establish a reasonable probability that she would have gone to trial had counsel advised her that a conviction would subject her to mandatory removal. With respect to Artica-Romero's second claim regarding the Guidelines calculation, Judge Barksdale observes that it was reasonable for counsel not to object to the use of the gain amount of $812,149, as opposed to the loss amount, in determining Artica-Romero's total offense level. Id. at 7-8. That is so because under U.S.S.G. § 2B1.1, the loss amount could have been determined by calculating the difference between the insurance premiums actually paid and the insurance premiums that should have been paid, which would have yielded an intended loss amount in excess of $1.5 million. See id. at 8 (discussing United States v. Simpson, 538 F.3d 459 (6th Cir. 2008)). Because counsel was faced with the possibility that the intended loss could have been used to determine her offense level, Judge Barksdale concludes that Artica-Romero has not shown a likelihood of success on her claim that counsel was objectively unreasonable in opting to accept the lesser amount of $812,149. Id. As such, Judge Barksdale recommends that the Court find that Artica-Romero failed to show a substantial likelihood of establishing deficient performance in

support of the second claim in her § 2255 Motion. For these reasons, but without considering whether Artica-Romero showed extraordinary circumstances necessitating the grant of bail to preserve the effectiveness of habeas relief, Judge Barksdale recommends that the Court deny the Motion for Bail.

## II.    Artica-Romero's Objections

Artica-Romero contends that the Report is erroneous in concluding that she is unlikely to succeed on the merits of her claims. With respect to her first claim, Artica-Romero argues that the warnings she received from the Court – i.e., that there is a risk of deportation, even a high risk – fell short of impressing on her that a conviction would render her subject to <u>mandatory</u> deportation. Worse, Artica-Romero suggests, these warnings were confusing or misleading, magnified by the Court's own endorsement, because advising her that there was a risk or a high probability that she would be deported implied the negative – that there was a possibility, however slim, that she might not be deported. Artica-Romero also contends that the Magistrate Judge overlooked the compelling personal circumstances that might have motivated her to risk going to trial in a gamble to avoid deportation, such as the fact that one of her daughters can only receive treatment for ITP in the United States.

Artica-Romero also contends that the Magistrate Judge erred in concluding that her second ineffective assistance claim was unlikely to succeed on the merits. Artica-Romero points out that the gain amount of $812,149 was used because the PSR stated that the loss amount could not reasonably be determined. Artica-Romero accuses the United States of "changing horses" when it points out that the intended loss amount could have been calculated as the difference between the insurance premiums charged and the

insurance premiums that should have been charged. Essentially, she argues that the United States waived any reliance on the intended loss amount, and as such it was error for the Magistrate Judge to even consider what the intended loss amount might have been in analyzing whether counsel was ineffective. Artica-Romero also suggests that Simpson, 538 F.3d 459, was wrongly decided and this Court should disregard it, that the Court is not bound by the commentary to U.S.S.G. § 2B1.1 regarding how to determine the loss amount, and that § 2B1.1 requires the use of actual, economic loss, not intended loss.

The United States responds that Artica-Romero's Objections ignore the fact that she received ample warnings about the immigration consequences of pleading guilty, and that she specifically agreed that she would plead guilty even if the consequence of her plea would be automatic removal. The United States also responds that Artica-Romero is wrong to suggest that the United States is "changing horses" by pointing out that Artica-Romero's offense level could have been based on the intended loss amount. "The government's discussing intended loss in its response to the defendant's motion for bond was intended only to show that if the defendant had objected to the use of gain as a substitute for loss, the outcome likely would have been worse for her." Response at 6. The United States argues that Artica-Romero is incorrect in her assertion that the Sentencing Guidelines commentary is not binding: "Commentary and Application Notes to the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." Id. at 7 (quoting United States v. Wright, 862 F.3d 1265, 1274 n.3 (11th Cir. 2017) (citation and internal quotation marks omitted)). Finally, the United States responds that Artica-Romero is also incorrect in her assertion that only actual, economic loss can be used under U.S.S.G. § 2B1.1, not intended loss. Id. at 7-8

(citing U.S.S.G. § 2B1.1, Application Note 3(A); <u>United States v. Innarelli</u>, 524 F.3d 286, 290 (1st Cir. 2008); <u>United States v. Greene</u>, 279 F. App'x 902, 908, 909 (11th Cir. 2008)).

## III.    Discussion

As noted by Artica-Romero, the Eleventh Circuit set forth the standard for determining whether a habeas petitioner is entitled to release on bail in <u>Gomez</u>. <u>See</u> <u>Gomez</u>, 899 F.2d at 1125. There, the Court explained:

> A prisoner seeking release pending habeas corpus can be granted bail under two sets of circumstances: <u>first</u>, he must demonstrate a likelihood of success on the merits of a substantial constitutional claim; <u>second</u>, extraordinary and exceptional circumstances must exist which make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought.

<u>Id.</u> (emphasis in original) (citing <u>Calley v. Callaway</u>, 496 F.2d 701, 702 (5th Cir. 1974)).[4] This standard derives from the former Fifth Circuit decision in <u>Calley</u>, where the court held that the habeas petitioner must show that she "has a <u>high</u> probability of success" on the merits of a substantial constitutional claim. 496 F.2d at 702 (emphasis added). Because the focus of the Report, the Objections, and the Response has been on the first prong – whether Artica-Romero is likely to succeed on the merits of the two ineffective assistance claims in her § 2255 Motion – the Court begins its analysis there.[5]

To establish a claim of ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that her counsel's conduct amounted to constitutionally deficient

---

[4]    Decisions handed down by the former Fifth Circuit Court of Appeals before the close of business on September 30, 1981, are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

[5]    In the Report, the Magistrate Judge interprets <u>Gomez</u> as requiring a habeas petitioner to satisfy both the first and the second circumstances in order to obtain relief.  <u>See</u> Report at 4-5. While the language, "two sets of circumstances" might be read as suggesting that satisfaction of either alternative would be sufficient, the Court need not determine what the <u>Gomez</u> court intended because Artica-Romero cannot satisfy either of the two circumstances.

performance, and (2) that counsel's deficient performance sufficiently prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether a petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that, in light of all the circumstances, counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Strickland's two-part test applies to claims of ineffective assistance arising out of the plea negotiation process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Thus, a prisoner alleging ineffective assistance of counsel based on her attorney's performance during the plea process must show two things: (1) that her attorney's advice fell below an objective standard of reasonableness, and (2) a reasonable probability that the outcome of the plea

process would have been different with competent advice. <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012) (citation omitted).

### A. Artica-Romero's First Claim: Ineffective Assistance Under <u>Padilla</u>

The Supreme Court has held that counsel has a duty to advise her client of the immigration consequences of pleading guilty. <u>Padilla</u>, 559 U.S. at 367-69. The precise contours of that duty depend on whether the immigration ramifications are plain and clear. The Supreme Court recognized that there will

> undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain…. When the law is not succinct or straightforward… a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

<u>Id.</u> at 369. "But when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear." <u>Id.</u>

Deportation consequences are clear when a non-citizen is convicted of an "aggravated felony." Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), upon conviction of an aggravated felony, a non-citizen is subject to automatic deportation. <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii) (non-citizens convicted of an aggravated felony are removable). A conviction for fraud is an aggravated felony, and therefore subjects a non-citizen to automatic deportation, when the loss to the victim exceeds $10,000. 8 U.S.C. § 1101(a)(43)(M).

Preliminarily, the Court observes that while Artica-Romero pled guilty to two counts of conspiracy to commit wire fraud, it was not necessarily clear <u>at the time</u> she pled guilty that the loss to the victims as calculated by the Court would exceed $10,000, so as to make the offense an aggravated felony. The circumstances here are similar to those in

<u>Zhang v. United States</u>, 506 F.3d 162 (2d Cir. 2007).[6] There, the defendant, a legal permanent resident, pled guilty to mail fraud. The plea agreement included the government's estimate that the loss was between $70,000 and $120,000, although the defendant reserved the right to contest the loss amount. <u>Id.</u> at 164-65. The loss amount wound up exceeding $10,000, subjecting him to automatic deportation. The defendant argued that the court misled him during the plea colloquy because it only advised him that deportation was possible, not that it was automatic or presumptively mandatory. <u>Id.</u> at 166-67. The court rejected that argument, because at the time the defendant pled guilty, it was not clear what the loss amount would ultimately be, and therefore it was accurate to advise him that deportation was merely possible. <u>Id.</u> at 168-69.

Similarly, when Artica-Romero pled guilty, it was not <u>certain</u> what the loss amount would be for purposes of 8 U.S.C. § 1101(a)(43)(M). Indeed, unlike in <u>Zhang</u>, Artica-Romero's Plea Agreement did not even contain a loss estimate. Nothing in the Plea Agreement required Artica-Romero to admit a particular loss amount. Moreover, nothing in Artica-Romero's Plea Agreement caused her to waive any right to object to the calculation of the actual loss amount at sentencing, so she retained the right to contest the amount. While the factual basis did contain facts from which one could infer that that the gain or intended loss for purposes of the calculation of the Guidelines was over $10,000, <u>see</u> Plea Agreement at 22-28, the text of 8 U.S.C. § 1101(a)(43)(M), which defines when

---

[6]     The Court recognizes that <u>Zhang</u> was decided before <u>Padilla</u>. However, the <u>Zhang</u> court's analysis focused on whether the warnings of potential rather than mandatory deportation were accurate at the time they were made, not on whether warnings regarding deportation consequences were required. <u>See</u> <u>id.</u> at 167 (recognizing conflict amongst the courts regarding whether deportation consequences were required to be addressed, but finding no need to resolve the conflict because "the court did address deportation at the plea hearing."). Thus, the Court's discussion remains persuasive.

fraud is an aggravated felony, requires the <u>actual loss to the victim(s)</u> to exceed $10,000, <u>see</u> <u>Singh v. Attorney General</u>, 677 F.3d 503, 510-12 (3d Cir. 2012) (§ 1101(a)(43)(M) requires proof of actual loss to the victims); <u>Pierre v. Holder</u>, 588 F.3d 767, 773 (2d Cir. 2009) (same) (citation omitted). The Plea Agreement contains no admission of the actual loss. And while Artica-Romero <u>later</u> agreed to pay one victim over $31,000 in restitution, Artica-Romero does not suggest that she had agreed to this <u>at the time of the plea colloquy</u>.

Nevertheless, because there are facts in the factual basis suggesting that the loss could exceed $10,000, and Artica-Romero did later agree to pay restitution in excess of $31,000, the Court will assume that at the time she entered the guilty plea, counsel was aware of sufficient facts to conclude that Artica-Romero would be pleading guilty to an aggravated felony. As such, the Court will assume that counsel's duty was clear: "constitutionally competent counsel would have advised [Artica-Romero] that [her] conviction … made [her] subject to <u>automatic</u> deportation," <u>Padilla</u>, 559 U.S. at 360 (emphasis added).

The Court further assumes, without deciding, that counsel did not advise Artica-Romero that she would be subject to presumptively mandatory removal, and therefore his performance was deficient. The question thus becomes: did Artica-Romero suffer prejudice? To show prejudice, Artica-Romero "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. <u>Hill</u> does not require Artica-Romero to show "more likely than not" that she would have gone to trial, but it does require her to show that the likelihood of a different result is "substantial, not just conceivable." <u>Harrington</u>

_v. Richter_, 562 U.S. 86, 111-12 (2011) (citing <u>Strickland</u>, 466 U.S. at 693). A reasonable likelihood of prejudice exists if Artica-Romero can show "that a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 559 U.S. at 372.

The Court agrees with the Magistrate Judge's determination that Artica-Romero has not shown a likelihood of success on her claim that she was prejudiced by counsel's deficient performance. Both for the reasons stated in the Report and because even before she pled guilty, Artica-Romero was an illegal alien subject to deportation, Artica-Romero is unlikely to succeed in establishing a substantial constitutional claim as to her first § 2255 claim for relief. In the Report the Magistrate Judge concludes that Artica-Romero is unlikely to show prejudice, in part, because she pled guilty despite acknowledging numerous warnings that a conviction would likely subject her to removal, including at the detention hearing and during the plea colloquy itself. Report at 5-7; <u>see also</u> Plea Tr. at 19, 26, 34; Plea Agreement at 2 ¶ A.2. Of course, all of these warnings advised Artica-Romero only that deportation was <u>possible</u> or <u>likely</u>, not that it was <u>presumptively mandatory</u>.[7] Thus, in and of themselves, these warnings would not have cured any deficiency in counsel's advice, such that the Court would find no prejudice. However, the warnings given to Artica-Romero in open Court are not the sole evidence on the question of whether she was prejudiced by any inaccurate advice regarding the deportation consequences of a guilty plea. Artica-Romero's Plea Agreement specifically addressed the question of whether she

---

[7] To the extent Artica-Romero suggests that the Magistrate Judge misled her by advising that deportation was possible or likely, rather than mandatory, this claim likely fails for the same reasons that the defendant's claim failed in <u>Zhang</u>, 506 F.3d 162. At the time Artica-Romero pled guilty, the Magistrate Judge did not know, because it had not been established, what the actual loss to the victim(s) was for purposes of 8 U.S.C. § 1101(a)(43)(M). As such, the Court would not find it likely that Artica-Romero could establish that it was inappropriate to advise her that deportation was possible, but not necessarily mandatory, because it was not yet established whether Artica-Romero's offense was an aggravated felony under § 1101(a)(43)(M).

would plead guilty if such a plea would subject her to "automatic removal from the United States following completion of [her] sentence." Plea Agreement at 4-5 ¶ A.8. By executing the Plea Agreement, Artica-Romero agreed to the following provision:

> 8. Removal – Notification
>
> The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, **even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.**

Plea Agreement at 4-5 ¶ A.8 (emphases added).

Artica-Romero now urges the Court to disregard the removal notification because "the Court failed to address this provision of the plea agreement during the plea colloquy. The Court never asked the defendant during the change of plea any question about this provision in the plea agreement." Objections at 10.[8] This is inaccurate. During the plea colloquy, the Magistrate Judge specifically asked Artica-Romero whether she understood the above removal notification, and Artica-Romero affirmed under oath that she did. Plea Tr. at 34. Moreover, Artica-Romero stated under oath that she read the entire Plea Agreement after it was translated into Spanish, that she read and initialed every page, that

---

[8] To the extent Artica-Romero claims in her Objections the notification was neutralized by the erroneous advice from the Magistrate Judge, see Objections at 11, the Court notes that Artica-Romero did not raise this argument before the Magistrate Judge. Thus, the Court need not consider it now. See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

she understood "each part" of it, and that her attorney had answered all of her questions. Id. at 30-31. She also told Judge Barksdale that there was nothing in the Plea Agreement that Judge Barksdale needed to explain to her. Solemn declarations in open court, such as these, carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74 (1977). While the Magistrate Judge did not review the removal notification verbatim, she discharged her Rule 11 obligations by asking Artica-Romero whether she read and understood the provision, and by advising Artica-Romero "that, if convicted, [she] … may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O).

In light of the circumstances presented here, especially the removal notification in the Plea Agreement, the Court determines that Artica-Romero's Objections to the conclusion that she has not shown a likelihood of establishing a reasonable probability that she would have foregone a guilty plea and proceeded to trial but for the deficient advice of counsel is due to be overruled. Artica-Romero herself agreed that she would plead guilty regardless of the immigration consequences, even if the consequence was automatic removal. Plea Agreement at 4-5 ¶ A.8. For that reason alone, Artica-Romero would be unlikely to make the requisite showing of prejudice required under Padilla.

Artica-Romero's first claim likely fails for yet another reason. According to the PSR, Artica-Romero is an illegal alien. PSR at 2. Indeed, she reported to the probation officer

> that she, [Felipe] Hernandez [a boyfriend], and their daughter … illegally entered the United States in approximately 2002 (defendant age 20), and settled in Orlando, Florida. Immigration records confirm that the defendant entered the United States without inspection. Records indicate that an immigration judge administratively closed the defendant's removal proceedings in 2015, which subsequently have been reopened and remain pending.

Id. at 20 ¶ 69. A person who enters the United States or remains illegally is subject to deportation. 8 U.S.C. § 1227(a)(1). As such, Artica-Romero's guilty plea and conviction did not cause her to become subject to deportation. Artica-Romero was already subject to deportation by virtue of her status as an illegal alien. Indeed, as noted in the PSR, Artica-Romero was already the subject of a pending removal proceeding.

Because Artica-Romero was illegally present in the country and already subject to removal, unlike the petitioner in Padilla who was a lawful permanent resident, she is unlikely to be able to establish prejudice under Padilla. The Fifth Circuit Court of Appeals addressed a similar issue in United States v. Batamula, 823 F.3d 237, 241-42 (5th Cir. 2016). There, the Fifth Circuit held that a defendant who unlawfully overstayed his F-1 visa could not establish prejudice under Padilla. Id. The court explained,

> Batamula's theory of prejudice relies on two dubious assertions: first, that he was not deportable under § 1227 at the time he pleaded guilty; and second, that if he had refused to plead guilty, the Government would have gone to trial under the one-count indictment without adding additional charges. The Government argues that Batamula failed to show prejudice because he was already deportable for having overstayed his visa under § 1227(a)(1)(C)(i). The record and controlling law unequivocally support the Government's position. Because the undisputed record evidence shows that Batamula's first assertion is false, we do not address the second.
>
> Section 1227(a)(1)(C)(i) provides that "[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted ... is deportable." Batamula is deportable under this subsection if he "was admitted as a nonimmigrant for a temporary period, ... the period has elapsed[,] and ... [he] has not departed." Equan v. INS, 844 F.2d 276, 278 (5th Cir.1988). Undisputed record evidence shows that Batamula entered the U.S. on a non-immigrant F–1 student visa, the visa expired, and Batamula did not depart the country. Accordingly, Batamula's deportability under § 1227 was a fait accompli before he pleaded guilty under the two-count information. Proceeding to trial under the one-count indictment would not change his deportable status. Under these circumstances, Batamula has failed to put forward a rational explanation of his desire to proceed to trial. See Padilla, 559 U.S. at 372, 130 S.Ct. 1473.

*Id.* at 242. The Fourth Circuit Court of Appeals reached a similar conclusion in United States v. Sinclair, 409 F. App'x 674, 675 (4th Cir. 2011). The court held that the district court's failure to advise the defendant about the immigration consequences of pleading guilty did not affect his substantial rights "because he was an illegal alien and therefore his guilty plea had no bearing on his deportability." *Id.* (citation and footnote omitted). Consistent with this authority, in Gutierrez v. United States, the Eleventh Circuit ruled that even if the defendant was not aware of the risk of deportation, he failed to show prejudice because it would not have been rational to reject the plea bargain where, among other things, he was already an illegal alien and therefore already subject to removal. 560 F. App'x 924, 927 (11th Cir. 2014). Recently, in United States v. Donjuan, the Tenth Circuit expressed doubt as to whether Padilla even applied to a defendant because the defendant was already in the country illegally, and therefore was already subject to removal. 720 F. App'x 486, 490 (10th Cir. 2018). Notably, even the petitioner's brief in Padilla conceded that the holding he sought would not apply to illegal aliens. Reply Brief of Petitioner at 17-18, Padilla v. Kentucky, 130 S. Ct. 1473 (2010), No. 08-651, 2009 WL 2917817, at *17-18 ("[O]nly lawfully admitted immigrants can plausibly allege prejudice from conviction of a deportable offense. Illegal aliens generally cannot, absent a colorable pending or future claim to legal immigration status, because illegal presence is grounds for removal independent of the conviction."). Finally, the Court finds persuasive the discussion by the court in United States v. Aceves, Civ. No. 10–00738 SOM/LEK, 2011 WL 976706, at *4-6 (D. Hawaii Mar. 17, 2011). There, the district court found that an illegal alien could not prove prejudice under Padilla. In doing so, the court stated:

> [h]ad he gone to trial instead of pleading guilty, he would not have been transformed into a legal resident. This is so even if he had been acquitted.

In other words, it was not his conviction that made him removable. Removal therefore should not reasonably have affected his decision to plead guilty, and he cannot show prejudice flowing from that plea, even if [counsel] failed to inform him about removal.

Id. at *5.

Because Artica-Romero was already subject to removal due to her illegal alien status, she has not shown a likelihood of establishing that, but for the allegedly erroneous advice, it would have been rational to reject a plea bargain that dismissed 55 of the 57 counts against her, and promised that the government would recommend a two-level reduction for acceptance of responsibility and potentially a third level, therefore substantially reducing her likely guideline term of imprisonment. Artica-Romero had little to gain in terms of her immigration status by going to trial; she only risked exposure to more prison time.[9] And because she is the sole caretaker of four daughters, one of whom is ill, it would make sense for Artica-Romero to focus on reducing her potential time in prison, which the Plea Agreement accomplished, rather than the deportation consequences, which were already significantly adverse. Moreover, at the sentencing hearing defense counsel advised the Court that "if she is going to be deported, then we will go ahead and sign the paperwork so that we won't object to an immediate deportation." Immediately after counsel made this statement, the Court asked Artica-Romero if she would like to say anything, and Artica-Romero responded, "No Your Honor." Additionally, at the conclusion of the sentencing hearing, counsel for Artica-Romero discussed with the

---

[9]     Although the conviction would not have changed the fact that Artica-Romero was an illegal alien already subject to deportation, it might have impacted her eligibility for cancellation of removal under 8 U.S.C. § 1229b(b). However, as the district court in Aceves observed, "[n]othing in Padilla required [the attorney] to counsel Medina Aceves about cancellation of removal. Even if [the attorney] had been so required, Medina Aceves must make some showing of how he would have established all four elements to show prejudice. He does not do this at all." Aceves, 2011 WL 976706, at *6.

Court Artica-Romero's intention to explore the possibility of immediate deportation in lieu of serving a prison sentence, and how long it might take to explore that possibility. Given Artica-Romero's stated willingness to agree to immediate deportation, Artica-Romero fails to make a showing that she is likely to establish that it would have been rational for her to reject the benefits of the Plea Agreement and insist on going to trial based on the fact that she would face mandatory deportation. Accordingly, Artica-Romero has not shown that she is likely to succeed on her claim that she would have gone to trial had counsel properly advised her. Thus, she is not likely to succeed on her first claim.

### B. Artica-Romero's Second Claim: Ineffective Assistance for Failure to Object to the Loss Calculation

Artica-Romero's Objections pertaining to her second claim merit less discussion. Artica-Romero has failed to establish a likelihood of success on this claim because she fails to explain why it would be unreasonable for counsel not to object to the use of the $812,149 gain as the loss amount, when the loss amount used to calculate her Guidelines otherwise could have been higher. As noted by Judge Barksdale, use of intended loss as an alternative to actual gain would have resulted in a loss figure in excess of $1.5 million yielding a 16 level increase rather than the 14 level increase applied by the Court at her sentencing. Section 2B1.1's commentary plainly states that the loss amount may include the "intended loss amount," even if such losses were impossible or unlikely to occur. U.S.S.G. § 2B1.1, Application Note 3(A); see also Innarelli, 524 F.3d at 290; Greene, 279 F. App'x at 908, 909. While Artica-Romero urges the Court to ignore the commentary, she fails to explain why the Court would not treat the commentary as binding. Wright, 862 F.3d at 1274 n.3. And Artica-Romero fails to explain why, in light of the Sixth Circuit's well

reasoned decision concluding that the intended loss amount in an insurance fraud scheme may be the difference between the premiums actually paid and the premiums the insurer would have charged, counsel's acceptance of the lower gain figure was objectively unreasonable. Simpson, 538 F.3d at 461-62. The fact that the government raises these arguments in this post-conviction proceeding does not mean that it is "changing horses," as Artica-Romero alleges. Rather, the government is addressing Artica-Romero's ineffective assistance of counsel claim and explaining why, in its view, Artica-Romero is unlikely to succeed on her claim that it was unreasonable for counsel not to object to the use of the gain as a substitute for the loss amount. Accordingly, Artica-Romero's second claim fails to present a substantial constitutional claim on which she has a likelihood of succeeding.

### C.  Artica-Romero's Claim of Extraordinary or Exceptional Circumstances

Having determined that Artica-Romero is not likely to succeed on the merits of either claim in her § 2255 Motion, in an abundance of caution, the Court considers the second Gomez prong: whether "extraordinary and exceptional circumstances … exist which make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought." Gomez, 899 F.2d at 1125. For many of the reasons discussed above, release on bail will not "preserve the effectiveness of the habeas corpus relief sought." Id. While Artica-Romero has presented the Court with a compelling personal and family situation – to which the Court is not unsympathetic – none of it changes the fact that Artica-Romero is already subject to removal by virtue of being in the country illegally. Understandably, Artica-Romero may wish to remain in the country because one of her daughters receives treatment here for ITP. However, even if the Court granted the § 2255 Motion, the result

would be vacatur of her guilty plea or a resentencing hearing with a different loss amount calculation. It would not address her core concern about removal from the country: vacatur of the guilty plea or resentencing "would not have transformed [Artica-Romero] into a legal resident," and "it was not [her] conviction that made [her] removable," but her status as an illegal alien. Aceves, 2011 WL 976706, at *5. See also Fernandez v. United States, No. 16-CV-60091-LOCH, 2017 WL 6597535, at *14 (S.D. Fla. Mar. 2, 2017) ("Further, even if he was granted Section 2255 relief, the remedy would be withdrawal of his allegedly involuntary guilty plea or resentencing, not release, and therefore, release would be an inappropriate remedy." (citing Gomez, 899 F.2d at 1125)), report and recommendation adopted by 2017 WL 6597968 (Mar. 13, 2017). Nor do Artica-Romero's assertions that the fact that she is the sole caretaker of her children and that she may have a significant medical condition present extraordinary and exceptional circumstances warranting bail to preserve the effectiveness of the habeas relief sought. Unfortunately, that a defendant before a court for sentencing is the sole caretaker of children even a child who suffers from an illness is neither extraordinary nor exceptional. Quite sadly, it occurs with some frequency, and indeed, in Artica-Romero's case was addressed at sentencing and played a significant role in the Court's decision to vary downward, by almost fifty percent at the low end and more than fifty percent at the high end of her Guideline range. As to Artica-Romero's own potential medical diagnosis, the Court extended her report date to allow her to attend the medical appointment and to obtain the diagnosis. While the Court has not been advised of the outcome, Artica-Romero has made no showing that if she received an unfortunate diagnosis, the Bureau of Prisons would be unequipped to provide the necessary treatment. As such, the Court determines that Artica-Romero has also failed to

satisfy the second <u>Gomez</u> prong. She has failed to establish extraordinary and exceptional circumstances exist which necessitate a grant of bail to preserve the effectiveness of habeas relief.

### IV.    Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Artica-Romero "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Anyi Artica-Romero's Objections (Civ. Doc. 16) to the Report and Recommendation (Civ. Doc. 14) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Civ. Doc. 14), as supplemented herein, is **ADOPTED** as the opinion of the Court.

3. Artica-Romero's Motion for Bail (Civ. Doc. 2) is **DENIED**.

4. The Court **DENIES** a certificate of appealability.

    **DONE AND ORDERED** at Jacksonville, Florida this 20th day of August, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

Copies:

Counsel of record
Anyi Artica-Romero