ANYI ARTICA-ROMERO,

           Petitioner,

vs.                                 Case No.:    3:18-cv-969-J-34PDB
                                                      3:17-cr-44-J-34PDB

UNITED STATES OF AMERICA,

           Respondent.

_____

## ORDER

      This case is before the Court on Petitioner Anyi Artica-Romero's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 22; Amended § 2255 Motion).[1] The United States has responded (Civ. Doc. 27; Response), and Artica-Romero waived the filing of a reply (Civ. Doc. 29; Notice of Waiving Reply). Thus, the matter is ripe for review. Previously, the Court effectively ruled on the merits of the Amended § 2255 Motion when it overruled Artica-Romero's objections to a report and recommendation recommending that the Court deny her Motion for Bail (Civ. Doc. 2; Motion for Bail); (Civ. Doc. 14; Report); (Civ. Doc. 16; Objections); (Civ. Doc. 21; Response to Objections); (Civ. Doc. 23; Order Overruling Objections).[2] Artica-Romero filed an

---

[1]    Citations to the record in the underlying criminal case, <u>United States v. Anyi Artica-Romero</u>, No. 3:17-cr-44-J-34PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil 28 U.S.C. § 2255 case, No. 3:18-cv-969-J-34PDB, will be denoted as "Civ. Doc. __."

[2]    After the United States responded to Artica-Romero's objections to the Report and Recommendation, Artica-Romero filed the Amended § 2255 Motion. The Amended § 2255 Motion is the same as the original; it was only amended to add Artica-Romero's signature. Thus, the filing of the Amended § 2255 Motion does not change the analysis.

interlocutory appeal (Civ. Doc. 24; Notice of Appeal), but the Eleventh Circuit Court of Appeals denied a certificate of appealability (Civ. Doc. 26; USCA Order).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4] For the reasons set forth below, Artica-Romero's Amended § 2255 Motion is due to be denied.

## I.    Background

On January 26, 2018, Artica-Romero pled guilty to two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. (Crim. Doc. 59; Plea Agreement); (Crim. Doc. 107; Plea Tr.). In exchange for her plea of guilty, the United States agreed to dismiss Counts Three through Fifty-Seven of the Indictment, see Plea Agreement at 3 ¶ A.4, to recommend a two-level reduction to her adjusted offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), id. at 3 ¶ A.6, and to recommend an

---

[3]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[4]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

additional one-level reduction at sentencing if Artica-Romero qualified under § 3E1.1(b), id.

According to her Plea Agreement, between September 2015 and March 2017, Artica-Romero worked for two construction companies. Plea Agreement at 22-28. As part of the charged conspiracy, Artica-Romero and her co-defendants caused workers' compensation insurance companies to unknowingly provide insurance coverage for hundreds of construction workers and millions of dollars of payroll despite not being paid the premiums commensurate with such coverage. (Crim. Doc. 76; PSR at ¶¶ 15-34). At sentencing, the Court determined that Artica-Romero had a total offense level of 20 and a criminal history category of I under the United States Sentencing Guidelines (Guidelines), yielding an advisory sentencing range of 33 to 41 months' imprisonment. See PSR at ¶¶ 55, 58, 89. The Court calculated the total offense level as follows: a base offense level of 7 because the offense of conviction was punishable by up to 20 years' imprisonment, plus a 14-level enhancement because the loss could not be reasonably determined and the gain was $812,149, plus a 2-level enhancement because the offense involved a violation of a "Stop Work Order" issued by the State of Florida, and minus 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1. The Court ultimately varied below the Guidelines range and sentenced Artica-Romero to a term of imprisonment of 18 months. (Crim. Doc. 86; Judgment).

Artica-Romero did not appeal the Court's sentence. However, less than three months after the Court entered judgment, Artica-Romero filed a motion to vacate under 28 U.S.C. § 2255. (Civ. Doc. 1; § 2255 Motion). In the § 2255 Motion, Artica-Romero raised two claims: (1) that trial counsel gave ineffective assistance under Padilla v. Kentucky, 559

U.S. 356 (2010), because he failed to advise her that the offense to which she was pleading guilty rendered her automatically deportable, and (2) counsel gave ineffective assistance at sentencing by failing to object to the use of the gain amount ($812,149) to determine her offense level. The Amended § 2255 Motion raises the same claims, but was filed merely to add Artica-Romero's signature.

## II.    The Motion for Bail

Shortly after filing the § 2255 Motion, Artica-Romero filed the Motion for Bail. Because of its relevance to the Court's decision on the merits, the Court recounts the arguments below. Citing the standard set forth in <u>Gomez v. United States</u>, 899 F.2d 1124, 1125 (11th Cir. 1990), Artica-Romero contended that the Court should grant the Motion for Bail because, among other things, she was likely to succeed on the merits of the § 2255 Motion. She further argued that her case presented extraordinary circumstances that warranted bail because she would likely serve out her entire 18-month prison term before the Court ruled on her § 2255 Motion; because she is the sole caretaker of four minor daughters, one of whom suffers from a chronic medical condition called idiopathic thrombocytopenic purpura (ITP); and because on August 16, 2018, she had a doctor's appointment to receive test results to determine if she had cervical cancer.

On August 14, 2018, the Honorable Patricia D. Barksdale, United States Magistrate Judge, entered the Report recommending that the Court deny the Motion for Bail. In doing so, Judge Barksdale recommended that the Court find that Artica-Romero was not likely to succeed on the merits of either of the claims in her § 2255 Motion. Report at 3-8. First, Judge Barksdale concluded that even assuming trial counsel failed to advise Artica-Romero that pleading guilty would subject her to automatic deportation, she was unlikely

to show that she suffered prejudice. Report at 5-7. In support of this conclusion, Judge Barksdale observed that Artica-Romero received numerous warnings in Court that a conviction would likely result in her deportation, including at her initial appearance, at her detention hearing, and during the plea colloquy. Judge Barksdale further observed that in her Plea Agreement, Artica-Romero specifically stated that she agreed to plead guilty even if the consequence of doing so was automatic removal. In light of the fact that Artica-Romero pled guilty despite these warnings and statements, Judge Barksdale recommended that the Court find there was not a reasonable probability that Artica-Romero would have gone to trial had counsel advised her that a conviction would subject her to mandatory removal. With respect to Artica-Romero's second claim regarding the Guidelines calculation, Judge Barksdale observed that it was reasonable for counsel not to object to the use of the gain amount of $812,149, as opposed to the loss amount, in determining Artica-Romero's total offense level. Id. at 7-8. That was so because under U.S.S.G. § 2B1.1, the loss amount could have been determined by calculating the difference between the insurance premiums actually paid and the insurance premiums that should have been paid, which would have yielded a loss amount in excess of $1.5 million. See id. at 8 (discussing United States v. Simpson, 538 F.3d 459 (6th Cir. 2008)). Because counsel was faced with the possibility that the $1.5 million loss could have been used to determine her offense level, Judge Barksdale concluded that Artica-Romero had not shown a reasonable likelihood of success on her claim that counsel was objectively unreasonable in opting to accept the lesser amount of $812,149. Id. As such, Judge Barksdale recommended that the Court find that Artica-Romero failed to show a reasonable likelihood of establishing deficient performance in support of the second claim

in her § 2255 Motion. For these reasons, Judge Barksdale recommended that the Court deny the Motion for Bail.

Artica-Romero objected to the Report, contending that the Magistrate Judge erred in concluding she was unlikely to succeed on the merits of her claims. With respect to her first claim, Artica-Romero argued that the warnings she received from the Court – i.e., that there is a risk of deportation, even a high risk – fell short of impressing on her that a conviction would subject her to <u>mandatory</u> deportation. Worse, Artica-Romero suggested, these warnings were confusing or misleading, magnified by the Court's own endorsement, because advising her that there was a risk or a high probability that she would be deported implied the negative – that there was a possibility, however slim, that she might not be deported. Artica-Romero also contended that the Magistrate Judge overlooked the compelling personal circumstances that might have motivated her to risk going to trial in a gamble to avoid deportation, such as the fact that one of her daughters could only receive treatment for ITP in the United States.

Artica-Romero further contended that the Magistrate Judge erred in concluding that her second ineffective assistance claim was unlikely to succeed on the merits. In this regard, Artica-Romero pointed out that the gain amount of $812,149 was used because the PSR stated that the loss amount could not reasonably be determined. Artica-Romero accused the United States of "changing horses" when it pointed out that the intended loss amount could have been calculated as the difference between the insurance premiums charged and the insurance premiums that should have been charged. Essentially, she argued that the United States waived any reliance on the intended loss amount, and as such it was error for the Magistrate Judge to even consider what the intended loss amount

might have been in analyzing whether counsel was ineffective. Artica-Romero also suggested that Simpson, 538 F.3d 459, was wrongly decided and this Court should disregard it, that the Court is not bound by the commentary to U.S.S.G. § 2B1.1 regarding how to determine the loss amount, and that § 2B1.1 requires the use of actual, economic loss, not intended loss.

The United States responded that Artica-Romero's Objections ignored the fact that she received ample warnings about the immigration consequences of pleading guilty, and that she specifically agreed that she would plead guilty even if the consequence of her plea would be automatic removal. The United States also asserted that Artica-Romero was wrong to suggest that the United States was "changing horses" by pointing out that Artica-Romero's offense level could have been based on the intended loss amount. "The government's discussing intended loss in its response to the defendant's motion for bond was intended only to show that if the defendant had objected to the use of gain as a substitute for loss, the outcome likely would have been worse for her." Response at 6. The United States argued that Artica-Romero was similarly incorrect in her assertion that the Guidelines commentary was not binding: "Commentary and Application Notes to the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." Id. at 7 (quoting United States v. Wright, 862 F.3d 1265, 1274 n.3 (11th Cir. 2017) (citation and internal quotation marks omitted)). Finally, the United States responded that Artica-Romero was also incorrect in her assertion that only actual, economic loss could be used under U.S.S.G. § 2B1.1, not intended loss. Id. at 7-8 (citing U.S.S.G. § 2B1.1, Application Note 3(A); United States v. Innarelli, 524 F.3d 286, 290 (1st Cir. 2008); United States v. Greene, 279 F. App'x 902, 908, 909 (11th Cir. 2008)).

After reviewing the Report, the Objections, and the United States' Response to Objections, the Court denied the Motion for Bail. See generally Order Denying Motion for Bail. The Court determined that Artica-Romero had not demonstrated a reasonable likelihood of succeeding on either claim, id. at 8-20, and further determined that Artica-Romero had not demonstrated the existence of extraordinary circumstances, id. at 20-22.

### III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct her sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to her sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that her counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance sufficiently prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that

counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that, in light of all the circumstances, counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Strickland's two-part test applies to claims of ineffective assistance arising out of the plea negotiation process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Thus, a prisoner alleging ineffective assistance of counsel based on her attorney's performance during the plea process must show two things: (1) that her attorney's advice fell below an objective standard of reasonableness, and (2) a reasonable probability that the outcome of the plea process would have been different with competent advice. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citation omitted).

## A.  Artica-Romero's First Claim: Ineffective Assistance Under <u>Padilla</u>

The Supreme Court has held that counsel has a duty to advise her client of the immigration consequences of pleading guilty. <u>Padilla</u>, 559 U.S. at 367-69. The precise contours of that duty depend on whether the immigration ramifications are plain and clear. The Supreme Court recognized that there will

> undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain…. When the law is not succinct or straightforward… a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

<u>Id.</u> at 369. "But when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear." <u>Id.</u>

The deportation consequences are clear when a non-citizen is convicted of an "aggravated felony." Pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii), a non-citizen is subject to automatic deportation upon conviction of an aggravated felony. <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii) (non-citizens convicted of an aggravated felony are removable). An offense that "involves fraud or deceit" is an aggravated felony, and therefore subjects a non-citizen to automatic deportation, if the loss to the victim exceeds $10,000. 8 U.S.C. § 1101(a)(43)(M). Conspiracy to commit fraud is an aggravated felony as well if the intended loss amount exceeds $10,000. <u>See</u> <u>id.</u>, § 1101(a)(43)(U); <u>Adeoye v. U.S. Atty. Gen.</u>, 403 F. App'x 462, 464-65 (11th Cir. 2010).

Preliminarily, the Court observes that while Artica-Romero pled guilty to two counts of conspiracy to commit wire fraud, it was not immediately clear <u>at the time</u> she pled guilty that the loss to the victims (as calculated by the Court) would exceed $10,000, so as to make the offense an aggravated felony. The circumstances here are similar to those in

<u>Zhang v. United States</u>, 506 F.3d 162 (2d Cir. 2007).[5] There, the defendant, a legal permanent resident, pled guilty to mail fraud. The plea agreement included the government's estimate that the loss was between $70,000 and $120,000, although the defendant reserved the right to contest the loss amount. <u>Id.</u> at 164-65. The loss amount wound up exceeding $10,000, subjecting him to automatic deportation. The defendant argued that the court misled him during the plea colloquy because it only advised him that deportation was possible, not that it was automatic or presumptively mandatory. <u>Id.</u> at 166-67. The Second Circuit rejected that argument, because at the time the defendant pled guilty, it was not clear what the loss amount would ultimately be, and therefore it was accurate to advise him that deportation was merely possible. <u>Id.</u> at 168-69.

Similarly, when Artica-Romero pled guilty, it was not <u>certain</u> what the loss amount would be for purposes of 8 U.S.C. §§ 1101(a)(43)(M) and (U). Unlike in <u>Zhang</u>, Artica-Romero's Plea Agreement did not even contain a loss estimate. Nothing in the Plea Agreement required Artica-Romero to admit a particular loss amount. Moreover, nothing in the Plea Agreement caused Artica-Romero to waive any right to object to the calculation of the loss amount, so she retained the right to contest any asserted loss amount. While the factual basis did contain facts from which one could infer that that the loss was over $10,000, the Plea Agreement contained no clear admission of the loss. Plea Agreement at 22-28. And while Artica-Romero <u>later</u> agreed to pay one of the victims over $31,000 in

---

[5]     The Court recognizes that <u>Zhang</u> was decided before <u>Padilla</u>. However, the <u>Zhang</u> court's analysis focused on whether the warnings of potential rather than mandatory deportation were accurate at the time they were made, not whether warnings regarding deportation consequences were required at all. <u>See id.</u> at 167 (recognizing conflict amongst the courts regarding whether deportation consequences were required to be addressed, but finding no need to resolve the conflict because "the court did address deportation at the plea hearing."). Thus, the Second Circuit's discussion remains persuasive and relevant.

restitution, nothing indicates that Artica-Romero had agreed to this amount at the time of the plea colloquy.

Nevertheless, because there are facts in the Plea Agreement's factual basis suggesting that the loss could exceed $10,000 and Artica-Romero did later agree to pay restitution in excess of $31,000, the Court will assume that at the time she entered the guilty plea, counsel was aware of sufficient facts to conclude that Artica-Romero would be pleading guilty to an aggravated felony. For the sake of argument, the Court will assume that counsel's duty was clear: "constitutionally competent counsel would have advised [Artica-Romero] that [her] conviction … made [her] subject to <u>automatic</u> deportation," <u>Padilla</u>, 559 U.S. at 360 (emphasis added).

The Court further assumes, without deciding, that counsel did not advise Artica-Romero that she would be subject to presumptively mandatory removal, and therefore that his performance was deficient. The question thus becomes: did Artica-Romero suffer prejudice? To show prejudice, Artica-Romero "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. <u>Hill</u> does not require Artica-Romero to show "more likely than not" that she would have gone to trial, but it does require her to show that the likelihood of a different result is "substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 111-12 (2011) (citing <u>Strickland</u>, 466 U.S. at 693). A reasonable likelihood of prejudice exists if Artica-Romero can show "that a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 559 U.S. at 372.

Artica-Romero has failed to establish prejudice because, for one reason, she pled guilty despite acknowledging numerous warnings that a conviction would likely subject her

to removal, including at the detention hearing and the plea colloquy itself. <u>See</u> Report at 5-7; Plea Tr. at 19, 26, 34; Plea Agreement at 2 ¶ A.2. Of course, all of these warnings advised Artica-Romero only that deportation was possible or likely, not that it was presumptively mandatory.[6] Thus, in and of themselves, they would not have cured any deficiency in counsel's advice, such that the Court would find no prejudice. However, the warnings given to Artica-Romero in open Court are not the sole evidence on the question of whether she was prejudiced by any inaccurate advice regarding the deportation consequences of a guilty plea. Artica-Romero's Plea Agreement specifically addressed the question of whether she would have pled guilty if such a plea would have subjected her to "automatic removal from the United States following completion of [her] sentence." Plea Agreement at 4-5 ¶ A.8. Artica-Romero agreed to the following provision:

8. <u>Removal – Notification</u>

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. <u>The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea,</u> **<u>even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.</u>**

---

[6] To the extent Artica-Romero suggests that the Court misled her by advising her that deportation was possible or likely, rather than mandatory, this claim fails for the same reasons that the defendant's claim failed in <u>Zhang</u>, 506 F.3d 162. At the time Artica-Romero pled guilty, the Court did not know, because it had not been established, what the actual loss to the victim(s) was. As such, it was appropriate to advise her that deportation was possible, but not necessarily mandatory, because it was not yet established whether Artica-Romero's offense was an aggravated felony under § 1101(a)(43)(M).

Plea Agreement at 4-5 ¶ A.8 (emphases added).

Artica-Romero urged the Court to disregard the removal notification because "the Court failed to address this provision of the plea agreement during the plea colloquy. The Court never asked the defendant during the change of plea any question about this provision in the plea agreement." Objections at 10. This is inaccurate. At the plea colloquy, the Magistrate Judge asked Artica-Romero whether she understood the above removal notification, and Artica-Romero affirmed under oath that she did. Plea Tr. at 34. Moreover, Artica-Romero stated under oath that she read the entire Plea Agreement after it was translated into Spanish, that she read and initialed every page, that she understood "each part" of it, and that her attorney had answered all of her questions. Id. at 30-31. She also told Judge Barksdale that there was nothing in the Plea Agreement that Judge Barksdale needed to explain to her. Solemn declarations in open court, such as these, carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74 (1977). While the Magistrate Judge did not review the provision verbatim, she discharged her Rule 11 obligations by asking Artica-Romero whether she understood the provision, and by advising Artica-Romero "that, if convicted, [she] … may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O).

In light of the circumstances here, especially the removal notification in the Plea Agreement, the Court determines that Artica-Romero has failed to show a reasonable probability that she would have foregone a guilty plea and proceeded to trial but for the deficient advice. Artica-Romero herself agreed that she would have pled guilty regardless of the immigration consequences, even if the consequence was automatic removal. Plea

Agreement at 4-5 ¶ A.8. For that reason alone, Artica-Romero fails to establish prejudice under Padilla.

Artica-Romero's claim fails for yet another reason. According to the PSR, Artica-Romero is an illegal alien. PSR at 2. Indeed, she reported to the probation officer

> that she, [Felipe] Hernandez [a boyfriend], and their daughter … illegally entered the United States in approximately 2002 (defendant age 20), and settled in Orlando, Florida. Immigration records confirm that the defendant entered the United States without inspection. Records indicate that an immigration judge administratively closed the defendant's removal proceedings in 2015, which subsequently have been reopened and remain pending.

Id. at 20 ¶ 69. A person who enters the United States or remains illegally is subject to automatic deportation. 8 U.S.C. § 1227(a)(1). As such, Artica-Romero's guilty plea and conviction did not cause her to become subject to deportation. Artica-Romero was already subject to deportation by virtue of her status as an illegal alien. Indeed, as noted in the PSR, Artica-Romero was already the subject of a pending removal proceeding.

Because Artica-Romero was illegally present in the country and already subject to removal, unlike the petitioner in Padilla who was a lawful permanent resident, she cannot establish prejudice under Padilla. The Fifth Circuit Court of Appeals addressed a similar situation in United States v. Batamula, 823 F.3d 237, 241-42 (5th Cir. 2016). There, the Fifth Circuit held that a defendant who unlawfully overstayed his F-1 visa could not establish prejudice under Padilla. Id. The court explained,

> Batamula's theory of prejudice relies on two dubious assertions: first, that he was not deportable under § 1227 at the time he pleaded guilty; and second, that if he had refused to plead guilty, the Government would have gone to trial under the one-count indictment without adding additional charges. The Government argues that Batamula failed to show prejudice because he was already deportable for having overstayed his visa under § 1227(a)(1)(C)(i). The record and controlling law unequivocally support the

Government's position. Because the undisputed record evidence shows that Batamula's first assertion is false, we do not address the second.

Section 1227(a)(1)(C)(i) provides that "[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted ... is deportable." Batamula is deportable under this subsection if he "was admitted as a nonimmigrant for a temporary period, ... the period has elapsed[,] and ... [he] has not departed." Equan v. INS, 844 F.2d 276, 278 (5th Cir.1988). Undisputed record evidence shows that Batamula entered the U.S. on a non-immigrant F–1 student visa, the visa expired, and Batamula did not depart the country. Accordingly, Batamula's deportability under § 1227 was a fait accompli before he pleaded guilty under the two-count information. Proceeding to trial under the one-count indictment would not change his deportable status. Under these circumstances, Batamula has failed to put forward a rational explanation of his desire to proceed to trial. See Padilla, 559 U.S. at 372, 130 S.Ct. 1473.

Id. at 242. The Fourth Circuit Court of Appeals reached a similar conclusion in United States v. Sinclair, 409 F. App'x 674, 675 (4th Cir. 2011). The court held that the district court's failure to advise the defendant about the immigration consequences of pleading guilty did not affect his substantial rights "because he was an illegal alien and therefore his guilty plea had no bearing on his deportability." Id. (citation and footnote omitted). Consistent with this authority, in Gutierrez v. United States, the Eleventh Circuit ruled that even if the defendant was not aware of the risk of deportation, he failed to show prejudice because it would not have been rational to reject the plea bargain where, among other things, he was already an illegal alien and therefore already subject to removal. 560 F. App'x 924, 927 (11th Cir. 2014). Recently, in United States v. Donjuan, the Tenth Circuit expressed doubt as to whether Padilla even applied to a defendant where the defendant was in the country illegally, and therefore was already subject to removal. 720 F. App'x 486, 490 (10th Cir. 2018). Notably, even the petitioner's brief in Padilla conceded that the holding he sought would not apply to illegal aliens. Reply Brief of Petitioner at 17-18, Padilla v. Kentucky, 130 S. Ct. 1473 (2010), No. 08-651, 2009 WL 2917817, at *17-18

("[O]nly lawfully admitted immigrants can plausibly allege prejudice from conviction of a deportable offense. Illegal aliens generally cannot, absent a colorable pending or future claim to legal immigration status, because illegal presence is grounds for removal independent of the conviction."). Finally, the Court finds persuasive the discussion by the court in <u>United States v. Aceves</u>, Civ. No. 10–00738 SOM/LEK, 2011 WL 976706, at *4-6 (D. Hawaii Mar. 17, 2011). There, the district court found that an illegal alien could not prove prejudice under <u>Padilla</u>. In doing so, the court stated:

> [h]ad he gone to trial instead of pleading guilty, he would not have been transformed into a legal resident. This is so even if he had been acquitted. In other words, it was not his conviction that made him removable. Removal therefore should not reasonably have affected his decision to plead guilty, and he cannot show prejudice flowing from that plea, even if [counsel] failed to inform him about removal.

<u>Id.</u> at *5.

Because Artica-Romero was already subject to removal due to her illegal alien status, she cannot show that, but for the allegedly erroneous advice, it would have been rational to reject a plea bargain that dismissed 55 of the 57 counts against her, and promised that the government would recommend at least a two-level reduction for acceptance of responsibility and potentially a third level, therefore substantially reducing her likely guideline term of imprisonment. Artica-Romero had little to gain in terms of her immigration status by going to trial; she only risked more prison time.[7] And because at the time she was the sole caretaker of four daughters, one of whom was ill, it would have only

---

[7]    Although the conviction would not have changed the fact that Artica-Romero was an illegal alien already subject to deportation, it might have impacted her eligibility for cancellation of removal under 8 U.S.C. § 1229b(b). However, as the district court in <u>Aceves</u> observed, "[n]othing in <u>Padilla</u> required [the attorney] to counsel Medina Aceves about cancellation of removal. Even if [the attorney] had been so required, Medina Aceves must make some showing of how he would have established all four elements to show prejudice. He does not do this at all." <u>Aceves</u>, 2011 WL 976706, at *6.

made sense for Artica-Romero to focus on reducing her potential time in prison, which the Plea Agreement accomplished, rather than the deportation consequences, which were already significantly adverse. Moreover, at the sentencing hearing defense counsel advised the Court that "if she is going to be deported, then we will go ahead and sign the paperwork so that we won't object to an immediate deportation." (Crim. Doc. 119; Sentencing Transcript at 22). Immediately after counsel made this statement, the Court asked Artica-Romero if she would like to say anything, and Artica-Romero responded, "No, Your Honor." Id. Additionally, at the conclusion of the sentencing hearing, counsel for Artica-Romero discussed with the Court Artica-Romero's intention to explore the possibility of immediate deportation in lieu of serving a prison sentence, and how long it might take to explore that possibility. Given Artica-Romero's stated willingness to agree to immediate deportation, the record refutes Artica-Romero's suggestion that she would have rejected the benefits of the plea bargain and gone to trial had counsel advised her that a conviction subjected her to mandatory removal. Artica-Romero cannot show a reasonable likelihood that she would have gone to trial even had counsel properly advised her. As such, she is not entitled to relief on her claim that counsel was ineffective under Padilla.

## B. Artica-Romero's Second Claim: Ineffective Assistance at Sentencing

Artica-Romero's second claim merits less discussion. Artica-Romero has failed to show it was unreasonable for counsel not to object to the use of the $812,149 gain amount as a proxy for the loss amount, because otherwise the loss amount used to calculate her Guidelines could have been higher. The government could have used the intended loss instead of the actual gain to calculate the loss amount under U.S.S.G. § 2B1.1, which would have yielded a significantly greater loss amount of $1.5 million. Section 2B1.1's

commentary plainly states that the loss amount may include the "intended loss amount," even if such losses were impossible or unlikely to occur. U.S.S.G. § 2B1.1, Application Note 3(A); see also Innarelli, 524 F.3d at 290; Greene, 279 F. App'x at 908, 909. While Artica-Romero urges the Court to ignore the commentary, the Court cannot do so because the commentary is binding. Wright, 862 F.3d at 1274 n.3. And Artica-Romero fails to explain, in light of the Sixth Circuit's well reasoned decision holding that the intended loss amount in an insurance fraud scheme may be the difference between the premiums actually paid and the premiums the insurer would have charged, Simpson, 538 F.3d at 461-62, why counsel's acceptance of the lower gain figure was objectively unreasonable. The fact that the government raises these arguments in the post-conviction proceeding does not mean it is "changing horses," as Artica-Romero alleges. Rather, the government is addressing Artica-Romero's ineffective assistance claim and explaining why, in its view, it was reasonable for counsel not to object to the use of the gain as a substitute for the intended loss amount. Accordingly, Artica-Romero's second claim of ineffective assistance lacks merit.

## IV. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Artica-Romero "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Anyi Artica-Romero's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 22) is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Artica-Romero, and close the file.

3. If Artica-Romero appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such

termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of February, 2019.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

Copies:

Counsel of record
Anyi Artica-Romero